IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Lula B. Nesmith, | ) | C/A No. 1:10-2359-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | ORDER |
| Michael J. Astrue, Commissioner, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This appeal from a denial of social security benefits is before the court for a final order pursuant to 28 U.S.C. § 636(c), Local Civil Rule 73.01(B) (D.S.C.), and the Honorable R. Bryan Harwell's September 14, 2010 order referring this matter for disposition. The parties consented to the undersigned United States Magistrate Judge's disposition of this case, with any appeal directly to the Fourth Circuit Court of Appeals.

Plaintiff files this appeal pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("the Act") to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the claim for disability insurance benefits ("DIB"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether he applied the proper legal standards. For the reasons that follow, the Commissioner's decision is reversed and remanded for further administrative proceedings.

I.      Relevant Background

        A.      Procedural History

        In her DIB application filed April 24, 2007,[1] Plaintiff alleges that she became disabled as of January 18, 2007 as a result of cancer. Tr. at 98–101, 106. Plaintiff's application was denied initially and on reconsideration. Tr. at 38–39. At Plaintiff's request, Administrative Law Judge Richard L. Vogel ("ALJ") conducted a video hearing on July 28, 2009 at which Plaintiff testified. Tr. at 16–37. In a September 1, 2009 decision, the ALJ found Plaintiff was not disabled. Tr. at 10–15. On July 10, 2010, the Appeals Council denied Plaintiff's request for further review, making the ALJ's decision the Commissioner's final decision for purposes of appeal. Tr. at 1–5. On August 31, 2010, Plaintiff timely filed this action seeking judicial review of the Commissioner's decision. [Entry #1].

        B.      Relevant Background and Medical History

        Plaintiff was born on April 30, 1946, is a high school graduate, and was 60 years old on her January 18, 2007 alleged onset date. Tr. at 19, 98, 111. She has past relevant work ("PRW") as cook and a sewing machine operator. Tr. at 107, 117–25, 20–23.

        On January 5, 2007, a mammogram of Plaintiff's right breast indicated a suspicious nodule highly suggestive of malignancy and for which biopsy was suggested.

_____

        [1]The ALJ and Plaintiff indicate Plaintiff filed her DIB application on April 24, 2007. Tr. at 10, Pl.'s Br. at 1. Her DIB application of record is dated April 25, 2007. Tr. at 98–101.

Tr. at 354–55. On January 10, 2007, Plaintiff followed up with nurse practitioner ("NP") Helen Phillips of Black River Healthcare, Inc. ("Black River"), who had ordered the mammogram. Tr. at 344.

On January 22, 2007, surgeon N. Craig Brackett, M.D. performed a biopsy of the nodule. Tr. at 298–99 (pathology rpt. of Kent M. McGinley, M.D.). The biopsy indicated that Plaintiff had an infiltrating ductal carcinoma, but it did not indicate whether there was definitive lymphovascular involvement. *Id.* On February 2, 2007, Plaintiff saw oncologist Darren E. Mullins, M.D. to discuss treatment options. Tr. at 170–72. Dr. Mullins explained that the biopsy indicated infiltrating ductal carcinoma of Plaintiff's right breast, and that he wished to present her case for multidisciplinary review to decide on the appropriate therapy. *Id.*

On February 13, 2007, Dr. Brackett performed a right partial mastectomy and reported that Plaintiff tolerated the procedure well. Tr. at 315–16. On February 27, 2007, Dr. Brackett performed another surgery for excision of the lateral surgical margins in Plaintiff's right breast. Tr. at 306–07. When Plaintiff saw Dr. Brackett on March 8, 2007, he noted that the re-excision had removed the residual ductal carcinoma. Tr. at 391.

On March 23, 2007, Plaintiff returned to Dr. Mullins, who recommended chemotherapy of Cytoxan and Taxotere in four cycles. Tr. at 227. Plaintiff received four chemotherapy treatments in April, May, and June 2007. Tr. at 224–26.

On July 6, 2007, Plaintiff saw Eric G. Aguero, M.D. who noted she had undergone a lumpectomy and sentinel lymph node biopsies, and that the three sentinel nodes that were removed were benign for carcinoma. Tr. at 284. Dr. Aguero noted that Plaintiff had completed chemotherapy, and that she agreed to begin radiotherapy. *Id.* On July 12, 2007, Dr. Brackett examined Plaintiff, found her incision had healed well, and found she was doing well overall. Tr. at 295. He noted that Plaintiff had completed four cycles of chemotherapy, was going to begin radiation therapy, and would undergo endocrine therapy. *Id.*

Dr. Aguero administered radiotherapy to Plaintiff from July 18, 2007 to September 5, 2007. Tr. at 282. He indicated that Plaintiff's reactions to the treatment included the expected toxicity of fatigue, hyperpigmentation, and dry desquamation of the skin. Tr. at 282–83. On October 8, 2007, Plaintiff saw Dr. Aguero in follow-up to her completed radiotherapy. Tr. at 280–81. Plaintiff reported occasional episodes of low back pain, but no new problems or symptoms, no breast or rib pain, no cough, and no shortness of breath. Tr. at 280. On examination, Dr. Aguero noted treatment-related subcutaneous edema of the right breast. *Id.* He found that Plaintiff was healing well after treatment. *Id.*

Plaintiff returned to Dr. Aguero on November 1, 2007, with complaints of drainage from the right breast. Tr. at 278. Dr. Aguero noted right breast edema from treatment effect, as well as very mild erythema. *Id.* Dr. Aguero diagnosed inflammatory changes within Plaintiff's right breast, which he believed were benign and related to her

4

treatment. Tr. at 279. He prescribed Dicloxacillin and cold compresses, and instructed her to return for her already-scheduled follow-up appointment, but to contact him if the discharge did not resolve within three weeks. *Id.*

On November 29, 2007, Plaintiff saw Dr. Brackett in follow-up. Tr. at 368. On examination, he found Plaintiff's incision was well-healed and noted bloody discharge from a central duct that he believed related to her surgery. *Id.* When she returned to Dr. Brackett on January 24, 2008, he indicated the discharge and redness had resolved and the erythema and edema were much better. Tr. at 367. Plaintiff again saw Dr. Brackett on May 8, 2008, and he indicated her mastitis, edema, and bloody discharge had resolved. Tr. at 366. Dr. Brackett indicated he was pleased with Plaintiff's progress and scheduled her for another mammogram within six months. *Id.*

On September 21, 2007, Harriett Steinert, M.D. examined Plaintiff at the request of the state agency. Tr. at 242–45. Plaintiff complained of breast cancer, hypertension, back pain, knee pain, and lower extremity swelling. Tr. at 243. Plaintiff indicated she had occasional pain in her lumbar spine that began hurting if she stood for a long time. *Id.* Plaintiff complained of right knee pain, and said that she was told she had arthritis in that knee. *Id.* Plaintiff also told Dr. Steinert that both of her legs swelled sometimes. *Id.* Dr. Steinert noted Plaintiff had undergone a lumpectomy and had completed chemotherapy and radiation therapies for her breast cancer. *Id.* She also noted Plaintiff had hypertension that was controlled with medication. Tr. at 244. On examination, Dr. Steinert noted

Plaintiff was 5'4" tall, weighed 202 pounds, and that her blood pressure was 164/96. *Id.* Dr. Steinert found Plaintiff had full range of motion in all four extremities except for her right knee. Tr. at 245. Plaintiff could flex her right knee to 120 degrees, and Dr. Steinert noted that knee had palpable crepitations. *Id.* She had no sensory or motor deficits in any extremity, no muscle atrophy, normal reflexes, and normal grip strength. *Id.* She had no tenderness to palpation of the spine or paraspinous muscles, straight leg raising tests were negative for both legs, and she had minimal pedal edema in both lower extremities. *Id.* Dr. Steinert observed that Plaintiff could walk across the room unassisted and with a slight limp. *Id.* She could not walk on her toes and heels because of right knee pain. *Id.* Dr. Steinert diagnosed Plaintiff with arthritis of the right knee, breast cancer, chronic lumbar spine pain, and hypertension. *Id.* Dr. Steinert recommended that Plaintiff's activities of daily living ("ADLs") and work activity be limited to doing no extensive walking, stooping, or crawling, due to the arthritis in her right knee. *Id.*

A September 21, 2007 x-ray of Plaintiff's lumbar spine indicated significant narrowing at the L4-L5 and L5-S1 disc spaces consistent with degenerative disc disease, as well as Grade I spondylolisthesis at L4 in relation to L5, thought to be related to degenerative disc disease. Tr. at 268. The x-rays indicated small osteophytes in the lower dorsal spine and some bone sclerosis regional to the SI joints bilaterally that possibly represented bilateral sacroiliitis. *Id.* The September 21, 2007 x-rays of the right knee showed mild degenerative joint disease. Tr. at 269.

Jim Liao, M.D., a non-examining state agency physician, reviewed Plaintiff's medical records and completed a physical residual functional capacity ("RFC") assessment in October 2007. Tr. at 246–53. Dr. Liao concluded that Plaintiff was capable of performing light work, i.e., she could occasionally lift and/or carry 20 pounds; frequently lift and/or carry ten pounds; and sit and stand and/or walk for about six hours in an eight-hour workday. Tr. at 247. He found Plaintiff was limited to frequent (as opposed to unlimited) pushing and pulling with her lower right extremity. *Id.* He opined that Plaintiff could occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; and occasionally balance, stoop, kneel, crouch, and crawl. Tr. at 248. He did not place any manipulative, visual, or communicative limitations on Plaintiff. Tr. at 249–50. The only environmental limitation he placed on Plaintiff's RFC was that she should avoid even moderate exposure to work hazards because she took pain medication. Tr. at 250.

Plaintiff returned to Black River on September 12, 2007, for follow up of her hypertension, dyslipidemia, and non-pitting edema in her lower extremities. Tr. at 343.[2] On October 12, 2007, Plaintiff saw Michael Tiburzi, M.D. at Black River for treatment of hypokalemia, hyperlipidemia, anemia, and breast cancer. Tr. at 342. Notes indicated Plaintiff's blood pressure was elevated (140/80), but that Plaintiff had not taken her blood pressure medication that day in anticipation of testing. *Id.* On October 23, 2007, Dr.

---

[2]Portions of the Black River progress notes are difficult to read.

Tiburzi noted that Plaintiff's blood pressure was 140/80, she weighed 205 pounds, she had pains in her arms, and he diagnosed hypokalemia, hypertension, foot pain, and myalgias. Tr. at 341. When Plaintiff returned to Dr. Tiburzi on October 31, 2007, her complaints remained the same, and her blood pressure was 140/78. Tr. at 340. She was referred to a podiatrist for examination of her foot pain. *Id.*

On November 26, 2007, Plaintiff's blood pressure was 138/82, and the treatment notes indicated Plaintiff's hypertension/blood pressure was stable. Tr. at 336. On December 11, 2007, Plaintiff was cleared to undergo cataract surgery, and progress notes indicated her blood pressure was 140/90. Tr. at 335. On December 19, 2007, Plaintiff's blood pressure was 159/90, and her medications were adjusted. Tr. at 334. Plaintiff's blood pressure at Black River on January 2, 2008 was 126/86. Tr. at 333. On April 3, 2008, Plaintiff's blood pressure was first recorded as 150/80 and then recorded as 140/76 with a large cuff. Tr. at 332. On April 4, 2008, Plaintiff's blood pressure was 130/80. Tr. at 331. On April 10, 2008, Plaintiff's blood pressure was 166/98, and her medications were adjusted. Tr. at 330. On April 24, 2008, Plaintiff's blood pressure reading was 176/92 with a small cuff, and 136/80 with a large cuff. Tr. at 329.

On July 10, 2008, Plaintiff's blood pressure read 160/90 with a small cuff and 130/78 with a large cuff. Tr. at 327. She was also treated for hyperglycemia. *Id.* Her blood pressure was 124/76 on July 24, 2008, and treatment notes indicated her hypertension was much improved. Tr. at 326. On September 9, 2008, Plaintiff's blood pressure was 140/80,

and she was cleared for another eye surgery. Tr. at 325. On September 15, 2008, her blood pressure was 130/56, and notes indicated Plaintiff continued to control her hypertension. Tr. at 324. On October 15, 2008, Plaintiff's blood pressure was 130/74, which was noted as stable. Tr. at 323.

On October 10, 2008, Plaintiff saw Dr. Aguero and his resident, John M. Watkins, M.D., in follow-up. Tr. at 276–77. She reported she was generally well, but said she continued to have chronic back, knee, and right shoulder discomfort. Tr. at 276. On examination, Plaintiff presented with no evidence of disease, and Dr. Aguero indicated he would continue yearly follow-up visits with her, in conjunction with other oncologists. Tr. at 277.

C.    The Administrative Hearing

At her July 28, 2009 hearing, Plaintiff testified that was a high school graduate and was 63 years old. Tr. at 18–19. She said she lived with her retired husband, they had seven adult children, and she had not worked since her alleged January 2007 onset date. Tr. at 19–20.

Plaintiff testified that from 2001 through January 2007, she worked in the kitchen at King Street Nursing Facilities, where her duties included cooking, washing dishes, mopping floors, and putting up groceries. Tr. at 20–21. She testified that she lifted approximately 50 pounds when performing that job, and that she left the job when diagnosed with cancer. Tr. at 21–22. Plaintiff also testified that beginning in the early

1990s, she performed PRW as a sewing machine operator at several different plants.  Tr. at 23. She said that job required her to operate a foot pedal, to twist and pick up bundles, some of which weighed 40 pounds. Tr. at 23–24.

Plaintiff testified that she had several treating doctors, that she had breast cancer, a lumpectomy in February 2007 and a re-incision in March 2007. Tr. at 24–25. Plaintiff testified she received approximately six weeks each of chemotherapy and radiation. Tr. at 26. She said that several lymph nodes were removed from under her right arm during her lumpectomy and that she was cancer free at the time of the hearing. *Id.* Plaintiff testified that since the lumpectomy, she had difficulty holding up her right arm, an effect her doctor attributed to her surgery. Tr. at 26–27. Plaintiff said she took Femara for prevention of cancer recurrence. Tr. at 27.

Plaintiff said she had difficulty controlling her blood pressure and that, at the time of the hearing, she was taking four prescription blood pressure medications. Tr. at 29. Plaintiff said she could not tell whether her blood pressure was controlled, and she attributed her drowsiness and need to take four 15-to-30-minute naps per day due to her blood pressure. *Id.* She testified that she had arthritis in both hands (worse in her right hand), right foot, and right knee. Tr. at 30. She said she took Celebrex for her arthritis. Tr. at 29–30. Plaintiff also said she had pain in the middle of her back, a little below her belt line. Tr. at 30. She said she felt pain in her back when she stood for about 15 minutes, walked for more than one hour, or sat for more than one hour. Tr. at 30–31. Plaintiff said

her right hand was dominant and that she felt pain in her right hand for the majority of a day. Tr. at 31–32. She testified that the hand pain made it difficult to lift things, such as a jug of milk into the refrigerator. Tr. at 32. She said that since her surgery, she could not lift her right arm to shoulder level without using her left hand to assist and push the right arm. *Id.* She said this also made it difficult to groom her hair. *Id.* Plaintiff stated that she usually wore bedroom shoes at home because her feet hurt. Tr. at 32–33. She said that arthritis made her right knee to hurts when she stood too long. *Id.* Plaintiff said her doctor had recently prescribed twice-daily Naproxen, 500 milligrams, for arthritis pain, but that she did not believe it was helping her pain. Tr. at 33–34. She said she also took the generic version of Tylenol for her arthritis pain. Tr. at 34. Plaintiff also indicated that she had more frequent memory problems since her cancer diagnosis and treatment. *Id.* Plaintiff said her diabetes was controlled by oral medication. Tr. at 34–35.

Plaintiff described her average day as consisting of eating, washing dishes, bathing, and dressing. Tr. at 35. She said could not vacuum because the vacuum cleaner was too heavy for her to push, and that she could sweep for approximately 15 minutes, but had to rest for about 15 minutes afterward because of foot pain. Tr. at 35–36. She indicated she also did other household chores in a similar manner, working for short intervals and then resting. Tr. at 36.

II.    Discussion

Plaintiff argues the ALJ erred by: (1) failing to consider her impairments of hypertension and limiting arthritis in combination with her other impairments; and (2) by finding Plaintiff was able to return to her PRW as a sewing machine operator. The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in his decision.

A.    The ALJ's Findings

In his September 1, 2009, decision, the ALJ made the following findings of fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.
2.    The claimant has not engaged in substantial gainful activity since January 18, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*).
3.    The claimant has the following severe impairments: Status post breast cancer with radiation and chemotherapy and arthritis of the right knee (20 CFR 404.1520(c)).
4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).
5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b).
6.    The claimant is capable of performing past relevant work as a sewing machine operator. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
7.    The claimant has not been under a disability, as defined in the Social Security Act, from January 18, 2007 through the date of this decision (20 CFR 404.1520(f)).

Tr. at 12–15.

B.    Legal Framework

1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[3] (4) whether such

---

[3] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least

impairment prevents claimant from performing PRW; and (5) whether the impairment prevents her from doing substantial gainful employment. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v.*

---

equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

14

*Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146, n.5 (regarding burdens of proof).

2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the

Commissioner's findings, and that his conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1973).

    C.     Analysis

Plaintiff argues that the ALJ erred by failing to: (1) consider all of her claimed impairments, separately and in combination; and (2) follow the requirements of SSR 82-62 in finding Plaintiff could return to her PRW as a sewing machine operator.

          1.      The ALJ Should Further Consider Plaintiff's Claimed Impairments in Combination

Plaintiff argues that the ALJ failed to consider all of her claimed impairments, including hypertension, arthritis that limited her ability to move her hands and right foot, low back pain, bilateral foot pain, degenerative joint disease and pain in her knees, rheumatoid arthritis, and peripheral edema. Pl.'s Br. at 10. She claims that the ALJ erred by failing to consider whether those impairments were severe and what impact they had on her RFC when considered in combination with her severe impairments of status post breast cancer with radiation and chemotherapy and arthritis of the right knee. *Id.* The Commissioner counters that the ALJ appropriately considered all of Plaintiff's claimed impairments and appropriately discounted some of them, and that substantial evidence supports his findings regarding Plaintiff's RFC. Def.'s Br. at 7–9.

16

In considering whether Plaintiff is disabled, the ALJ must consider the combined effect of Plaintiff's severe and nonsevere medically determinable impairments in determining the claimant's disability status. *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). Even if the claimant's impairment or impairments in and of themselves are not "Listed impairments" that are considered disabling per se, the Commissioner must also "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(d)(2)(B); *see also Walker* at 50 (finding the ALJ must "consider the combined effect of a claimant's impairments and not fragmentize them."). "As a corollary, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." *Id.* In evaluating Plaintiff's RFC, the ALJ must consider the combined effect of both severe and nonsevere medically-determinable impairments. 20 C.F.R. § 404.1545(e) ("[W]e will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity."); 20 C.F.R. § 404.1508 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, *not only by your statement of symptoms*.") (emphasis added); SSR 86-8 ("No symptom or combination of symptoms by itself can constitute a medically determinable impairment. In claims in which there are no medical signs or laboratory findings to substantiate the existence of a

medically determinable physical or mental impairment, the individual must be found not disabled at step 2 of the sequential evaluation process.").

In this case, the ALJ found that Plaintiff's impairments of "[s]tatus post breast cancer with radiation and chemotherapy and arthritis of the right knee" were severe impairments because they were "more than slight" and affected Plaintiff's ability to function. Tr. at 12 (citing 20 C.F.R. § 404.1520(c)). After finding Plaintiff did not have an impairment or combination of impairments that met or medically equaled a Listed impairment at step three, the ALJ determined Plaintiff had the RFC to perform the full range of light work, and that she could perform her PRW as a sewing machine operator. Tr. at 12–15. Accordingly, the ALJ found Plaintiff was not disabled.

The court disagrees with Plaintiff's argument that the ALJ did not address her claimed hypertension, arthritis, or back pain. In finding Plaintiff could perform the full range of light work, the ALJ indicated that he considered all of Plaintiff's claimed symptoms "and the extent to which these symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.929 and SSRs 96-4p and 96-7p." Tr. at 13. The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however [her] statements concerning the intensity, persistence and limiting effects of these symptoms [were] not credible to the extent they [were] inconsistent with the [ALJ's] residual functional capacity assessment." Tr. at 14.

The ALJ noted that Plaintiff "essentially testified that she is unable to work due to residuals from breast cancer surgeries (2), and radiation and chemotherapy treatments; hypertension; and pain and limitation of movement from arthritis in her hands, right knee, and right foot." Tr. at 13. He further detailed Plaintiff's complaints that she had headaches when her blood pressure was elevated, and that her back hurt if she sat for more than one hour, stood for more than 15 minutes, or walked about one hour. *Id.* He also noted her testimony that her feet hurt and that she had difficulty holding things with her right hand. *Id.* The ALJ then discussed Plaintiff's medical records in some detail and explained the extent to which he found her complaints credible.

Plaintiff claimed hypertension as one of her disabling impairments, and she argues the ALJ did not adequately consider it. The court disagrees and finds that the ALJ expressly discussed her hypertension, that it was controlled, and that it had little impact on her. Tr. at 14. He noted that Plaintiff's medical records indicated a 20-year history of hypertension, but noted that, when her medication was changed in June 2006, her blood pressure came under control and that she had only occasional increased readings. *Id.* He reviewed the treatment notes and found Plaintiff had not complained of debilitating headaches and that there was no evidence that hypertension had caused any end organ damage. *Id.*

A symptom that can be reasonably controlled by medication and/or treatment is not disabling. *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986). The ALJ's discussion

of Plaintiff's hypertension treatment is consistent with her medical records. *See, e.g.*, Tr. at 326, 331–32, 336). The court finds that the ALJ's consideration of Plaintiff's hypertension and his finding it is not a severe impairment is supported by substantial evidence.

Similarly, the court finds the ALJ adequately discussed Plaintiff's complaints of disabling back pain. In discussing Plaintiff's follow-up visits after her cancer surgery and treatment, he notes that in October 2007, she noted only occasional low back pain and that when she saw Dr. Beckett in May 2008, she reported no physical complaints. Tr. at 14 (citing ex. 10F, p. 5, available at 280, and 12F, p.1, available at 366).

This does not end the analysis of Plaintiff's first allegation of error, however. Plaintiff also complains that the ALJ did not sufficiently consider her degenerative joint disease and pain in her knees, rheumatoid arthritis, or peripheral edema. Pl.'s Br. at 10. She submits that these conditions impacted her ability to work and that the ALJ erred by not considering them separately or in combination with her other impairments. Pl.'s Br. at 11. The court agrees.

Although the ALJ found Plaintiff's arthritis in her right knee was a severe impairment that was "more than slight" and affected Plaintiff's ability to function (Tr. at 12), he did not discuss her right knee arthritis in further detail, nor did he attribute any functional limitations to that severe impairment. To the contrary, in evaluating Plaintiff's RFC and her credibility, the ALJ noted that Plaintiff complained of severe chronic right

knee pain and relied on portions of Dr. Steinert's September 2007 consultative examination findings to discount Plaintiff's right knee complaints as less-than-credible. Tr. at 14 (referring to ex. 6F, available at 242–45 and ex. 8F, p. 16, available at 269, and noting Dr. Steinert's findings that Plaintiff had a full range of motion in all extremities except the right knee, that Plaintiff's right knee flexion was limited to 120 degrees and had some crepitus, and that Sept. 2007 right knee x-rays showed only mild degenerative joint disease).

However, the ALJ did not reference other relevant portions of Dr. Steinert's report in which she noted that Plaintiff had minimal pedal edema in both lower extremities and in which she imposed nonexertional limits on Plaintiff's RFC. *See* Tr. at 245. The court agrees with Plaintiff that edema in her lower extremities arguably could impact her RFC. For example, Plaintiff testified that her PRW as a sewing machine operator required her to operate a foot pedal. Tr. at 23. In addition to Dr. Steinert's report, Plaintiff's medical records include findings of non-pitting edema. *See, e.g.*, Tr. at 343. The ALJ erred by failing to reference or discuss Plaintiff's claimed lower-extremity edema, consider whether it was a severe impairment, and to determine its potential impact on her RFC.

Further, although the ALJ referenced Dr. Steinert's consultative examination and some of her findings, he did not reference the nonexertional limitations Dr. Steinert placed on Plaintiff's RFC. *See* Tr. at 245 (Dr. Steinert's Sept. 21, 2007 report opining that Plaintiff's right-knee arthritis limited her ADLs and work activity, finding that Plaintiff

should not do extensive walking, stooping, or crawling). Although the ALJ was not required to accept Dr. Steinert's recommended limitations on Plaintiff, he was required to consider them and explain why he did not accept them. *See* 20 C.F.R. § 404.1527(d)(2) (i–ii) (noting ALJ is not bound by state agency medical consultants' findings, but is to consider findings and opinions by such consultants and other program physicians and specialists).

In this case, the ALJ did not reference the limitations Dr. Steinert found Plaintiff's knee arthritis caused, although he had determined that Plaintiff's right-knee arthritis was a severe impairment. *See* Tr. at 12. In fact, he cited Dr. Steinert's consultative examination as a reason he discounted Plaintiff's testimony that she had chronic right knee pain. Tr. at 14 (noting Dr. Steinert's finding Plaintiff had some crepitus and reduced flexion in her right knee, but also noting Dr. Steinert's indicating Plaintiff had full range of motion in her other joints and that Sept. 2007 x-rays showed only mild degenerative joint disease in the right knee).

In addition, the ALJ did not reference the findings of state agency medical consultant Jim Liao, M.D. Dr. Liao reviewed Plaintiff's medical records and opined that she could perform a limited range of light work. Tr. at 246–53. He found Plaintiff should be limited to frequent, as opposed to unlimited, push and/or pull movement, including operation of foot controls, in her lower right extremity. Tr. at 247.

22

Considering the medical evidence, particularly Plaintiff's arthritis of her right knee and Plaintiff's claimed edema, and the limitations examining consultant Dr. Steinert and reviewing consultant Dr. Liao placed on Plaintiff's ability to use her lower right extremity, the court cannot find the ALJ's decision is supported by substantial evidence. Remand for further proceedings is required so that the ALJ can fully consider these matters.

Further, the court agrees with Plaintiff that the ALJ did not sufficiently discuss all of Plaintiff's severe and nonsevere medically-determinable impairments in combination. *See Walker*, 889 F.2d at 50. Accordingly, on remand, the ALJ should consider Plaintiff's lower-extremity edema, hypertension, claimed back pain, bilateral foot pain, degenerative joint disease and pain in her knees, and rheumatoid arthritis. He should consider each claimed impairment separately, consider whether the medically-determinable impairments are severe or nonsevere, and consider all of Plaintiff's severe and nonsevere, medically determinable impairments in combination. As *Walker* requires, the ALJ must include in his decision an adequate explanation of his evaluation of the combined effects of the impairments. *Id.* The ALJ should then continue the sequential analysis as appropriate.

2.    The ALJ Did Not Comply with SSR 82-62 in Finding that Plaintiff Can Return to PRW as a Sewing Machine Operator

Plaintiff also argues that the ALJ erred by failing to comply with SSR 82-62 in determining she could return to her PRW as a sewing machine operator. Pl.'s Br. at 12. The Commissioner argues that the ALJ considered what he was required to consider and

properly found Plaintiff had the RFC to return to her PRW as a sewing machine operator as it was generally performed. Def.'s Br. at 9–10. The court agrees with Plaintiff.

SSR 82-62 sets forth the procedures the SSA uses at step four of the sequential analysis when determining whether the claimant's RFC permits her to return to her PRW. The ALJ must consider whether a claimant has the RFC to "meet the physical and mental demands of jobs a claimant has performed in the past (either the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy)," and, if the claimant can return to her PRW, she may be found to be not disabled. SSR 82-62, available at 1982 WL 31386, *3. The Ruling provides the following detail regarding what an ALJ is to include in his decision:

> Determination of the claimant's ability to do PRW requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the *Dictionary of Occupational Titles*, etc., on the requirements of the work as generally performed in the economy.

> The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit.

*Id.* Further, SSR 82-62 requires the following when the decisionmaker determines that a claimant can meet the physical and mental demands of PRW:

The rationale for a disability decision must be written so that a clear picture of the case can be obtained. *The rationale must follow an orderly pattern and show clearly how specific evidence leads to a conclusion.*

* * *

In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact:

1.    A finding of fact as to the individual's RFC.
2.    A finding of fact as to the physical and mental demands of the past job/occupation.
3.    A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

*Id.* at *3–4 (emphasis added).

At step four of the sequential evaluation, the ALJ found that Plaintiff had the RFC to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b). Tr. at 13.[4]

He did not place any nonexertional limitations on her RFC. The ALJ discussed Plaintiff's claimed impairments and symptoms and considered the extent to which he found them

---

[4] The Commissioner's regulations define work at the light exertional level as follows:

> (b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

credible in determining her RFC. Tr. at 13–14. He then concluded his step-four analysis by finding Plaintiff was capable of returning to PRW. The entire portion of his decision regarding Plaintiff's ability to return to her PRW follows:

> 6.    **The claimant is capable of performing past relevant work as a sewing machine operator. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).**
>
> The Dictionary of Occupational Titles shows that the claimant['s] past relevant work as a sewing machine operator, Dictionary of Occupational Titles number 787.682-058, SVP4, is performed at the light level of exertion and can be performed primarily while seated.
>
> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as generally performed.

Tr. at 15 (emphasis in original).

The court agrees with Plaintiff that the ALJ did not comply with SSR 82-62 in finding she could return to her PRW as a sewing machine operator. As support for his argument that the ALJ considered Plaintiff's descriptions of her past PRW, the Commissioner cites to the portion of Plaintiff's testimony in which she explained how she performed her job as a sewing machine operator and to her descriptions of the demands of that PRW in the Work History Report she provided to the SSA. Def.'s Br. at 9, citing Tr. at 23–24 (testimony), 120–23 (Work History Rpt.). Although the record does contain Plaintiff's description of her PRW as a sewing machine operator, nowhere in his decision does the ALJ discuss her statements regarding the requirements of that job or other PRW.

26

At the hearing, Plaintiff testified that her PRW involved operating a sewing machine, primarily by using a foot petal, that she had a production requirement, and that she had to lift bundles (of fabric) that weighed 40 pounds. Tr. at 23–24. In her Work History Report, she indicated she sometimes had to lift bundles of fabric that weighed up to 50 pounds. Tr. at 121–23. She also indicated she sat for eight hours per day in performing that work. *Id.*

By finding Plaintiff had the RFC to perform the full range of light work (which may require only occasional lifting of up to 20 pounds), the ALJ implicitly found Plaintiff could not perform her PRW as she previously performed it (which she said required occasional lifting of up to 50 pounds). SSR 82-62 does not permit such implicit findings at step four of the sequential evaluation when SSA finds a claimant is not disabled because she can perform her PRW.

Further, the ALJ did not satisfy SSR 82-62's requirement by providing some DOT information about the sewing machine operator job as generally performed. As the Commissioner states, the ALJ referenced the requirements of a sewing machine operator's position as set forth in the DOT[5] regarding how that job is generally performed. Tr. at 15. However, the ALJ's cursory reference to the DOT number for

_____

[5]In his brief, the Commissioner cites to a different DOT number (787.682-066, Sewing Machine Operator I) as applying to Plaintiff's PRW, than the ALJ cited in his decision (787.682-058, Sewing Machine Operator II). Compare Def.'s Br. at 10 with Tr. at 15. This slight discrepancy does not impact the court's ability to analyze Plaintiff's argument, but it highlights the need for additional detail regarding Plaintiff's PRW.

Plaintiff's PRW is not sufficient to satisfy SSR 82-62's mandate that he provide a written rationale offering a "clear picture of the case" and "show clearly how specific evidence" led him to the conclusion that Plaintiff could perform her PRW as it was generally performed.

In fact, the ALJ's only discussion of the requirements of Plaintiff's PRW is that it is of light exertion and can be performed primarily while seated. Tr. at 15. Far from providing the "clear picture" SSR 82-62 requires, this comment fosters confusion.

As an initial matter, the court notes that DOT 787.682-066 does not indicate the sewing machine operator II position can (or cannot) be performed primarily while seated, nor do DOT job descriptions generally offer options regarding whether a position may be done sitting or standing. *See generally Novak v. Comm'r of Soc. Sec. Admin.*, 9:08-2687-HFF (June 30, 2009) (noting the DOT's silence as to whether any job could be performed with sit/stand option). In assessing her RFC, the ALJ found Plaintiff could perform the full range of light work. Tr. at 13. As defined by the SSA and the DOT, a job of light exertion could involve prolonged standing or walking, or could involve sitting for extended periods and pushing and or pulling of arm or leg controls. 20 C.F.R. § 404.1567(b), DOT 787.682-066 (available at 1991 WL 681103).

The ALJ's generally finding Plaintiff could perform her PRW as it is normally performed, without otherwise discussing the physical and mental demands of Plaintiff's PRW, is insufficient to satisfy SSR 82-62. Without plainly setting forth the requirements

28

of Plaintiff's PRW as she performed it and as it is performed generally, the ALJ cannot clearly discuss the medical evidence of impairments related to Plaintiff's ability to meet the requirements of her PRW. Accordingly the court finds that the ALJ's decision is deficient in that regard and cannot be reviewed adequately by the court. This matter is remanded for further administrative action. If, on remand, the ALJ again determines Plaintiff's RFC permits her to perform PRW, the ALJ must specifically discuss the requirements of such PRW and explain whether her medically-determinable impairments permit her to perform the requirements of her PRW.

III.    Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court cannot determine that the Commissioner's decision followed applicable regulations or is supported by substantial evidence.

Accordingly, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under 42 U.S.C. § 405(g), this matter is reversed and remanded for further administrative proceedings.

IT IS SO ORDERED.

January 3, 2012                              Shiva V. Hodges
Columbia, South Carolina                     United States Magistrate Judge